```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
VIVIA AMALFITANO and                        :
GERARD AMALFITANO,
                                            :    04 CV 02027 (NRB)
            Plaintiffs,
                                            :
    -- against –
                                            :    PLAINTIFFS' PROPOSED
ARMAND J. ROSENBERG                              FINDINGS OF FACT AND
                                            :    CONCLUSIONS OF LAW
            Defendant.
-------------------------------------------------------------X
```

Plaintiffs submit the following proposed findings of fact and conclusions of law for consideration by the Court:

### Proposed Findings of Fact

1. Plaintiffs are married to each other and are domiciled and reside at 223 Westervelt Lane, Mahway, New Jersey.

2. Defendant Armand J. Rosenberg ("Defendant Rosenberg") is domiciled and resides at 169 Judson Avenue, Dobbs Ferry, New York.

3. The amount in controversy exceeds $75,000, exclusive of interest and costs.

4. In or about April 2001, Peter Costalas retained defendant Rosenberg to commence suit against plaintiffs herein.

5. In or about May 2001, defendant Rosenberg commenced suit against plaintiffs herein on behalf of Peter Costalas arising out of the acquisition by Vivia

Amalfitano's corporation, MSA Twins, Ltd., in September 2000 from a partnership known as 27 Whitehall Street Group of real property located at 27 Whitehall Street, New York City ("Costalas Litigation").

6.  The complaint in the Costalas Litigation was signed by defendant Rosenberg.

7.  The Rules of the Chief Administrator of the New York Courts provide in pertinent part as follows:

> § 130.1.1.  COSTS; SANCTIONS
>    * * *
> (c)  For purposes of this Part, conduct is frivolous if:
>
>    (1)  it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law;
>
>    (2)  it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or
>
>    (3)  it asserts material factual statements that are false
>
> . . . In determining whether the conduct undertaken was frivolous, the court shall consider, among other issues, (1) the circumstances under which the conduct took place, including the time available for investigation the legal or factual basis of the conduct; and (2) whether or not the conduct was continued when its lack of legal or factual basis was apparent, should have been apparent, or was brought to the attention of counsel or the party.
>
> § 130-1.1-a.  SIGNING OF PAPERS
>
>    (a) Signature.  Every pleading, written motion, and other paper, served on another party or filed or submitted to the court shall be signed by an attorney or by a party if the party is not represented by an attorney, with the name of the

2

attorney or party clearly printed or typed directly below the signature. . . .

    (b)  Certification.  By signing a paper, an attorney or party certifies that, to the best of that person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation of the papers or the contentions therein are not frivolous as defined in subsection (c) of section 130-1.1.

8.    The Disciplinary Rules of the Code of Professional Responsibility, as adopted by the Appellate Divisions of the Supreme Court of the State of New York, regulating the conduct of New York attorneys, provides in pertinent part as follows:

> § 1200.33 [DR 7-102]  REPRESENTING A CLIENT WITHIN THE BOUNDS OF THE LAW
>
> (a)  In the representation of a client, a lawyer shall not:
>
> (1) File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of the client when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injure another.
>
> (2)  Knowingly advance a claim or defense that is unwarranted under existing law, except that the lawyer may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law.
>
> (3)  Conceal or knowingly fail to disclose what which the lawyer is required by law to reveal.
>
> (4)  Knowingly use perjured testimony or false evidence.
>
> (5)  Knowingly make a false statement of law or fact.
>
> (6)  Participate in the creation or preservation of evidence when the lawyer knows or it is obvious that the evidence is false.
>
> (7)  Counsel or assist the client in conduct that the lawyer knows to be illegal or fraudulent.

>    (8)  Knowingly engage in other illegal conduct or conduct contrary to a disciplinary rule.
>
>   (b)  A lawyer who receives information clearly establishing that:
>
>   (1)  The client has, in the course of the representation, perpetrated a fraud upon a person or tribunal shall promptly call upon the client to rectify the same, and if the client refuses or is unable to do so, the lawyer shall reveal the fraud to the affected person or tribunal, except when the information is protected as a confidence or secret. . . .

9.      The only allegations set forth in the complaint in the Costalas Litigation purporting to connect Peter Costalas with the events alleged in the complaint, and thereby purporting to give him standing to maintain the Costalas Litigation, are as follows:

>   EIGHTEENTH:  That on or about December 16, 1980, plaintiff and his two brothers, John Costalas and James Costalas, formed a New York partnership known as "27 Whitehall Street Group".
>
>   NINETEENTH:  That since formation of said partnership, it has continuously existed, as originally formed to the present time.

10.     At the time the allegations set forth in paragraph 19 of the complaint in the Costalas Litigation were made and filed with the court, and throughout the pendency of the Costalas Litigation, defendant Rosenberg knew they were false, in that he knew that Peter Costalas had not been a partner in 27 Whitehall Street Group since in or about August 1993.

11.     By signing the complaint knowingly containing the false allegations set forth in paragraph 19 of the complaint in the Costalas Litigation, defendant Rosenberg's certification that to the best of his knowledge, information and belief,

4

formed after reasonable inquiry, such material factual statements were true (Rule §§ 130.1.1 & 130-1.1-a) constituted intent to deceive the court.

12.     The complaint in the Costalas Litigation contained a claim against Gerard Amalfitano seeking more than $12 million in treble damages under New York Judiciary Law § 487 for his involvement in an alleged scheme with his wife, Vivia Amalfitano, to wrongfully acquire the real property located at 27 Whitehall Street, New York, New York from its then owner, 27 Whitehall Street Group.

13.     In signing the complaint filed in the Costalas Litigation, defendant herein asserted a frivolous claim under Rule § 130.1.1(c), thereby making his certification false under Rule § 130-1.1-a, constituting an intent to deceive the court, since the complaint did not allege, and defendant herein did not contend or show that the alleged deceit was directed at a court or occurred during the course of a pending judicial proceeding, as required to state a claim under Judiciary Law § 487 (*Hansen v. Caffry*, 280 A.D.2d 704, 705, 720 N.Y.S.2d 258, 260 (3d Dept. 2001), *lv denied* 97 N.Y.2d 603, 735 N.Y.S.2d 492, 760 N.E.2d 1288 (2001), cited with approval in *Costalas v. Amalfitano*, 305 A.D.2d 202, 203-04, 760 N.Y.S.2d 422, 424 (1st Dept. 2003)).

14.     In or about July 2001, the defendants in the Costalas Litigation (plaintiffs herein) made a pre-answering motion to dismiss.

15. In response to said motion to dismiss, defendant Rosenberg prepared, signed and filed with the court a cross-motion for summary judgment on behalf of his client, Peter Costalas.

16. New York Civil Practice Law & Rules ("CPLR") § 3212 provides in pertinent part:

> (a) TIME; KIND OF ACTION.  Any party may move for summary judgment in any action, after issue has been joined; . . .

17. The cross-motion made by defendant Rosenberg in the Costalas Litigation was made before issue was joined.

18. By making such cross-motion, defendant Rosenberg engaged in frivolous conduct under Rule § 130.1.1(c), and his signature on the cross-motion constituted a false certification to the court in that such cross-motion was "completely without merit in law and [could not] be supported by a reasonable argument for an extension, modification or reversal of existing law." (Id).  The making of such false certification constituted an attempt to deceive the court.

19. In support of the motion to dismiss the Costalas Litigation, defendants therein (plaintiffs herein) submitted a document titled "Agreement and Assignment" dated August 1993 and signed by Peter Costalas and his brother, John Costalas, which provided, *inter alia*, that Peter Costalas transferred and assigned all his right, title and interest in 27 Whitehall Street Group to John Costalas.

20.     In further support of the motion to dismiss the Costalas Litigation, defendants therein submitted an affidavit which had been signed and sworn to by John Costalas and James Costalas in September 2000 when the Whitehall Property was sold to Vivia Amalfitano's company, MSA Twins, Ltd. attesting, *inter alia*, that they were the general partners of 27 Whitehall Street Group, that Peter Costalas had been a third partner therein, but that pursuant to an August 1993 agreement Peter Costalas had assigned and transferred to John Costalas all of his right, title and interest in and to the partnership and that by virtue of that transfer, John Costalas and James Costalas were the only partners of 27 Whitehall Street Group.

21.     Defendant Rosenberg prepared an affidavit for Peter Costalas to submit in opposition to defendants' motion and in support of his client's cross-motion for summary judgment.  The affidavit was notarized by defendant Rosenberg and provided in part as follows:

> It is an absolute fact – and defendants – who are part of the family – know this – that the piece of paper dated August 1993 never had and has no effect whatsoever on the ownership of my interest in the partnership that owns the real property.
>
> . . . It was never intended and did not have any real effect on anything whatsoever – let alone my interest in the partnership.  My signature was obtained by an elderly attorney who represented all three brothers and who felt that if he had such a paper in his file it might someday in the future be of value against creditors.  As noted above, it was never intended and did not divest my interest in the partnership.

22. Defendant Rosenberg submitted said affidavit in opposition to defendants' motion to dismiss and in support of Peter Costalas's cross-motion for summary judgment.

23. At the time defendant Rosenberg submitted said affidavit of Peter Costalas to the court, defendant Rosenberg knew that the above quoted statements of his client were false and that, in fact, Peter Costalas had transferred all of his interests in various Costalas family business to his brother John in August 1993 as part of the resolution of claims John and James Costalas had against Peter Costalas arising from Peter having obtained mortgage loans on properties owned by the family businesses and then losing the proceeds of those loans primarily in stock option trading for his own accounts.

24. By submitting Peter Costalas's affidavit to the court knowingly containing such false factual allegations, defendant Rosenberg engaged in deceit or collusion with intent to deceive the court.

25. Upon defendant Rosenberg's failure to appear at the oral argument of the motion and cross-motion, in October 2001 the Supreme Court (Gammerman, J.) dismissed the Costalas Litigation.

26. Defendant Rosenberg moved on behalf of his client Peter Costalas to vacate the dismissal.

27. In May 2002, the Supreme Court (Gammerman, J.) denied the motion, holding in pertinent part, that by reason of the parol evidence rule, as well as estoppel based on public policy grounds, Peter Costalas was precluded from contending that the August 1993 Agreement and Assignment document was not intended to be an effective assignment of his rights and interests in 27 Whitehall Street Group.

28. Defendant Rosenberg, as counsel of record to Peter Costalas, took an appeal from the denial of his client's motion to vacate the default to the Appellate Division of the Supreme Court, First Department. Defendant Rosenberg certified the record on appeal in November 2002, and the appeal was perfected by the filing of the record and appellant's brief in or about November 2002.

29. Appellant's brief was written and signed by defendant Rosenberg. Appellant's brief was filed in the Appellate Division, First Department on or about November 2002.

30. In appellant's brief, defendant Rosenberg sought reinstatement of the Judiciary Law § 487 claim against Gerard Amalfitano without discussion of the requirement that to state a claim for relief, the fraud or collusion must have been directed at a court or have taken place in a litigation.

31. In signing appellant's brief, defendant Rosenberg asserted a frivolous argument under Rule § 130.1.1(c), thereby making his certification false under Rule § 130-1.1-a, constituting an intent to deceive the court, since defendant Rosenberg

9

did not even contend in said brief that the alleged deceit was directed at a court or occurred during the course of a pending judicial proceeding, as required to state a claim under Judiciary Law § 487 (*Hansen v. Caffry*, 280 A.D.2d 704, 705, 720 N.Y.S.2d 258, 260 (3d Dept. 2001), *lv denied* 97 N.Y.2d 603, 735 N.Y.S.2d 492, 760 N.E.2d 1288 (2001), cited with approval in *Costalas v. Amalfitano*, 305 A.D.2d 202, 203-04, 760 N.Y.S.2d 422, 424 (1st Dept. 2003)).

      32. Defendant Rosenberg wrote in appellant's brief at page 2:

> Defendants claim that plaintiff disposed of his interest in the partnership some years ago despite the fact that numerous exhibits executed under penalty of perjury for many years thereafter, conclusively show that plaintiff continued and still is a member of the partnership.

      33. Defendant Rosenberg also argued in appellant's brief at page 12:

> In the case at bar, notwithstanding the lower Court's erroneous statement (11) that plaintiff did, indeed, submit a "slew of documents" demonstrating conclusively that he at all times was and remains to this day a partner. These documents (76-152) include income tax returns and other documents signed, under penalty of perjury, by the other partners, demonstrating that plaintiff for many years after the purported assignment was executed . . .

      34. And at page 16 of appellant's brief, defendant Rosenberg stated as fact:

> All of these documents clearly demonstrate that the so-called 1993 agreement was, in fact, nothing more than a piece of blank paper. They conclusively show that plaintiff and his brothers, long after 1993, were and continued to be partners.

35. In fact, at the time defendant Rosenberg made these statements, he knew that they were false and that the 1993 Agreement and Assignment had, in fact, transferred his client's interest in 27 Whitehall Street Group to John Costalas.

36. In or about December 1993, defendant Rosenberg signed and filed with the Appellate Division a reply brief in further support of his client's appeal. At page 3 of the reply brief, defendant Rosenberg argued:

> Furthermore, this Court will not possibly overlook the fact that defendants never, anywhere, have denied the official tax returns and other exhibits to be found at Pages 97 trough 152. In light of those exhibits – and others, it is not at all unusual that respondents' Brief is absolutely and completely bereft of the reality of this case.

37. In fact, when the reply brief was submitted to the Appellate Division, defendant Rosenberg knew that his client had not been a partner in 27 Whitehall Street Group since 1993 and that his client had not considered himself a partner from that time up until shortly before the Whitehall property was sold by 27 Whitehall Street Group to MSA Twins, Ltd.

38. In its decision dated May 13, 2003, the Appellate Division, First Department reversed the dismissal of the Costalas Litigation (except for affirming the dismissal of the Judiciary Law § 487 claim against Gerard Amalfitano). The Appellate Division wrote in pertinent part as follows:

> In opposition, plaintiff asserted that the assignment agreement never had any validity, that it was not intended to divest his ownership interest in the partnership, and that defendants were aware of this. He explained that the attorney who represented the

11

> partnership wanted such a paper in his file as it might "someday in the future be of value against creditors." Plaintiff also pointed out that the partnership's Federal Partnership Tax Returns for the years 1994, 1995, 1996 and 1997 identified him as a partner.
>
> \* \* \*
>
> Further, the motion court erred in holding as a matter of law that plaintiff must be estopped from claiming that the assignment agreement was never intended as a valid agreement. Serious open questions remain as to the real need for and purpose of the purported assignment, and for whose benefit it was intended. Before the court can properly conclude that plaintiff executed a sham agreement in order to defraud creditors, and therefore will be estopped from relying upon the exception the parol evidence rule for documents which were never intended to be contracts (*see Davis v. Davis*, 266 A.D.2d 867, 697 N.Y.S.2d 888), there should be an evidentiary exploration of the circumstances surrounding the purported assignment. Plaintiff's mere assertion that his signature "was obtained by an elderly attorney who represented all three brothers and who felt that if he had such a paper in his file it might someday in the future be of value against creditors" is insufficient to establish a need for an estoppel as a matter of law.
>
> Similarly, the issue of whether plaintiff has standing to maintain this action on his own behalf must await a fact finding as to his actual status vis-à-vis the partnership, and the particular circumstances of the transfer.

39. The reversal in the Appellate Division was directly and proximately caused by the deceit of defendant Rosenberg in advocating the position, which he knew was false, that the 1993 Agreement and Assignment was not intended to actually transfer Peter Costalas's partnership interest in 27 Whitehall Street Group to John Costalas.

40. After the Appellate Division reversal, the Costalas Litigation resumed in Supreme Court, New York County, and defendants therein served an answer to the complaint.

41. Subsequently, on July 15, 2003 the deposition of Peter Costalas was taken, with defendant Rosenberg present and representing his client. Vivia Amalfitano and Gerard Amalfitano were also present at the deposition.

42. At his deposition, Peter Costalas provided sworn testimony that defendant Rosenberg knew was untrue in material respects. Among these matters were: 1. Peter Costalas' testimony that he had invested in only five or ten stock options; 2. that whatever money he lost in the stock market was his own and none came from Costalas family businesses, and 3. that he had never taken loans out on behalf of the family businesses and used the proceeds to invest in the stock or option market.

43. At the time this testimony was given by Peter Costalas, it was known by defendant Rosenberg to be false. However, defendant Rosenberg never sought to correct that testimony, or to advise opposing counsel or his client that such testimony was false.

44. At his deposition, Peter Costalas denied that he had ever been served with the summons and complaint in a suit titled *Costalas v. Gruntal & Co., et al.* 92 Civ 8677, which had been commenced in the United States District Court for the Southern District of New York, and he denied that he had ever seen the complaint in that suit or signed any papers therein.

45.    Defendant Rosenberg knew that this testimony was false when given and specifically that Peter Costalas had been served with the summons and complaint, had seen the complaint and had signed a document in that litigation.

46.    At his deposition, Peter Costalas denied that he signed a stipulation dismissing the *Costalas v. Gruntal* litigation as against him.

47.    Defendant Rosenberg knew that this testimony was false when given, and specifically he knew that the stipulation in question was an authentic document which had been signed by Peter Costalas

48.    The Disciplinary Rules of the Code of Professional Responsibility, regulating the conduct of New York attorneys provides in pertinent part as follows:

> § 1200.33 [DR 7-102]  REPRESENTING A CLIENT WITHIN THE BOUNDS OF THE LAW
>
> (a)  In the representation of a client, a lawyer shall not:
>
> (1) File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of the client when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injure another.
>
> (2)  Knowingly advance a claim or defense that is unwarranted under existing law, except that the lawyer may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law.
>
> (3)  Conceal or knowingly fail to disclose what which the lawyer is required by law to reveal.
>
> (4)  Knowingly use perjured testimony or false evidence.
>
> (5)  Knowingly make a false statement of law or fact.

   (6) Participate in the creation or preservation of evidence when the lawyer knows or it is obvious that the evidence is false.

   (7) Counsel or assist the client in conduct that the lawyer knows to be illegal or fraudulent.

   (8) Knowingly engage in other illegal conduct or conduct contrary to a disciplinary rule.

  (b) A lawyer who receives information clearly establishing that:

   (1) The client has, in the course of the representation, perpetrated a fraud upon a person or tribunal shall promptly call upon the client to rectify the same, and if the client refuses or is unable to do so, the lawyer shall reveal the fraud to the affected person or tribunal, except when the information is protected as a confidence or secret. . . .

  49. By failing to comply with his duty to correct, or cause his client to correct, the above described false testimony of Peter Costalas, defendant Rosenberg engaged in conduct intended to deceive the court and the opposing parties in the Costalas Litigation.

  50. During discovery in the Costalas Litigation, defendants therein subpoenaed Howard Komendant to testify at deposition.

  51. Howard Komendant had been Peter Costalas's accountant.

  52. The notice of the deposition served on defendant Rosenberg clearly identified Mr. Komendant as belonging to a firm of certified public accountants.

  53. After receiving notice of Mr. Komendant's deposition, defendant Rosenberg wrote to Mr. Komendant advising him that "in my opinion, if, in fact, you

15

served in a professional capacity, all communications, contracts and documents were of a privileged nature."

54. In fact, New York law does not recognize an accountant-client privilege, and defendants' counsel so advised defendant Rosenberg on August 27, 2003 and demanded that he so inform Mr. Komendant.

55. Defendant Rosenberg never responded to counsel's letter, and as a result of defendant Rosenberg's letter to Mr. Komendant, Mr. Komendant refused to testify at a deposition without his counsel being present and whose fees would have to be paid by defendants therein (plaintiffs herein).

56. Defendant Rosenberg did not attend Mr. Komendant's deposition, and defendants paid Mr. Komendant's counsel $975 to appear thereat.

57. Defendant Rosenberg's letter to Mr. Komendant asserting a privilege was without any legal basis whatsoever and constituted deceit on the court and on defendants in a pending litigation.

58. The trial of the Costalas Litigation took place commencing October 16, 2003 before Justice Gammerman.

59. At the commencement of the cross-examination of Peter Costalas, defendants' counsel offered in evidence Peter Costalas's 1995-2002 personal income tax returns which had been produced by defendant Rosenberg in the Costalas Litigation by

order of the court over the objection of defendant Rosenberg. The tax returns were introduced in evidence at trial, also over the objection of defendant Rosenberg.

60. The federal tax returns produced showed dated filing receipt stamps of the Internal Revenue Service. The tax returns admitted in evidence included Peter Costalas's 1998 federal income tax return which reflected that it had been filed with the Internal Revenue Service on May 13, 2002.

61. On his 1995 – 2000 tax returns, Peter Costalas did not list any ownership interest in the 27 Whitehall Street Group partnership.

62. On redirect examination of Peter Costalas, defendant Rosenberg sought to introduce a document which he characterized as "what appears to be your Federal tax return for the year '98 with a covering letter from the CPA."

63. The court observed that Peter Costalas' 1998 income tax return was already in evidence and did not show any partnership interests at all.

64. Referring to the document he was attempting to have admitted in evidence, defendant Rosenberg responded: "This one does."

65. The document defendant Rosenberg sought to introduce in evidence was materially different from the 1998 return already admitted in evidence and, unlike the 1998 return admitted in evidence, contained no indication that it had ever been filed with the Internal Revenue Service.

66. The document offered by defendant Rosenberg was not admitted into evidence.

67. Defendant Rosenberg intended to deceive the court and defendants by seeking to introduce in evidence at trial a purported 1998 income tax return materially different from the one he had produced to defendants' counsel during discovery and which he had represented to defendant's counsel was Peter Costalas's 1998 income tax return.

68. At the close of the presentation of defendant Rosenberg's case on behalf of Peter Costalas, the court dismissed the Costalas Litigation finding that Peter Costalas had failed to establish any of the material allegations of wrongdoing alleged.

69. No appeal was taken from the court's dismissal of the Costalas Litigation.

70. Subsequently, defendant Rosenberg made a motion to vacate the judgment of dismissal.  Such motion was made by defendant Rosenberg without the knowledge or consent of Peter Costalas.

71. The motion was denied as totally without merit.

72. Defendant Rosenberg appealed from the order denying the motion and has perfected the appeal therein.  The appeal has not yet been decided.

73. In defending the Costalas Litigation, plaintiffs herein have incurred and paid legal fees and expenses of $ 95,861.78.

## Conclusions of Law

A. As a result of the above described conduct, defendant Rosenberg is guilty of deceit and collusion and consented and acquiesced in the deceit and collusion of his client Peter Costalas, with intent to deceive the Supreme Court of the State of New York, County of New York and the Appellate Division of the Supreme Court, First Judicial Department, in violation of New York Judiciary Law § 487.

B. The facts set forth herein establish that defendant Rosenberg engaged in a chronic, extreme pattern of legal delinquency in connection with his representation of Peter Costalas in the Costalas Litigation.

C. Plaintiffs herein are entitled to recover of defendant Rosenberg the amount of $ 95,861.78, plus interest at the rate of 9% per annum from the date plaintiffs made each payment to their counsel, and then that total is to be trebled, with the costs and disbursements of this litigation to be included in the judgment entered.

Dated: New York, New York
      October 24, 2005                     Respectfully submitted,

/s/_____
Richard E. Hahn (RH-5431)
 Attorney for Plaintiffs
444 Madison Avenue, 27th Floor
New York, New York 10022
 212-826-8200

To:   William J. Davis, Esq.
      Scheichet & Davis, P.C.
         Attorneys for Defendant
      767 Third Avenue, 24th Floor
      New York, New York 10017
         212-688-3200